**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LAWRENCE J. KAWECKI,
by JOANNE MARLOWE,
Conservator and Guardian,

        Plaintiff,

                              Case No. 04-70907

v.                            Hon. Gerald E. Rosen

COUNTY OF MACOMB, MACOMB
COUNTY DEPARTMENT OF SENIOR
CITIZEN SERVICES, NAOMI MIAL, and
MARY NELSON-PULICE,

        Defendants.

_____/

**OPINION AND ORDER REGARDING**
**DEFENDANTS' MOTION TO DISMISS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on April 29, 2005

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

## I.  INTRODUCTION

On March 10, 2004, Plaintiff Lawrence J. Kawecki commenced this suit in this

Court through his duly appointed conservator and guardian, Joanne Marlowe, asserting

federal constitutional and state-law claims against Defendants Macomb County, Macomb

County Department of Senior Citizen Services, Naomi Mial, and Mary Nelson-Pulice.[1]

_____

[1]Mr. Kawecki passed away on March 25, 2004, just after this suit was filed.  In addition
to her roles as conservator and guardian, Joanne Marlowe apparently has been designated as the

In support of these claims, Plaintiff alleges that Defendants mismanaged a conservatorship established for him by the Macomb County Probate Court, and that, as a result, funds and other assets belonging to Plaintiff were misappropriated from a conservatorship account.

By motion filed on July 20, 2004, Defendants now seek the dismissal of this action as barred by the jurisdictional <u>Rooker</u>-<u>Feldman</u> doctrine.[2]  Alternatively, Defendants argue that this case should be dismissed under the abstention principles set forth in <u>Younger v. Harris</u>, 401 U.S. 37, 91 S. Ct. 746 (1971), and its progeny.  These issues have been exhaustively briefed by the parties, through an initial round of filings and several supplemental submissions.  The parties' arguments have often generated more heat than light, have only seldom been narrowly focused on the facts and allegations of this particular case, and have occasionally degenerated into rather unfortunate name-calling.

Nonetheless, having sifted through the parties' written submissions and having reviewed the record as a whole, the Court finds that the operative facts and relevant legal issues are relatively straightforward, and that oral argument would not assist in the resolution of Defendants' motion.  Accordingly, the Court will decide this motion "on the

---

personal representative of Mr. Kawecki's estate, and has continued to pursue this litigation on behalf of the estate.  Nonetheless, the Court will continue to refer to Mr. Kawecki as the "Plaintiff" throughout the balance of this Opinion and Order.

    [2]This motion initially was brought by Defendants Macomb County, its Department of Senior Citizen Services, and Mary Nelson-Pulice.  Defendant Naomi Mial subsequently has joined in this motion, however.  Thus, the Court generally will refer collectively to the "Defendants" throughout the remainder of this Opinion and Order.

2

briefs." <u>See</u> Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This Opinion and Order sets forth the Court's rulings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

For present purposes, the Court accepts as true the allegations of Plaintiff's complaint. On or around January 23, 2003, a conservatorship was established for Plaintiff Lawrence J. Kawecki in the Macomb County Probate Court, and Defendant Macomb County Department of Senior Citizen Services ("MCDSCS") was appointed as the conservator.[3] Letters of Conservatorship subsequently were issued authorizing Defendant Naomi Mial, a case manager for the MCDSCS, to conduct financial business on behalf of Plaintiff and his conservatorship.[4]

Between November of 2002 and March of 2003, funds belonging to Plaintiff allegedly were misappropriated by Defendants Mial and Nelson-Pulice of the MCDSCS. As evidence of this misappropriation, Plaintiff cites a March 1, 2004 report by Donald M. Strehl, who was appointed by the Macomb County Probate Court to serve as a "special fiduciary" and charged with the task of investigating allegations of mismanagement of

---

[3]This conservatorship apparently was established as a result of Plaintiff's mental incapacitation.

[4]Just over two months before this conservatorship was established for Plaintiff, a conservatorship also was established for Lawrence R. Kawecki, Plaintiff's father. According to the complaint, the MCDSCS again was appointed as conservator, and Defendants Mial and Mary Nelson-Pulice were authorized to conduct financial business on behalf of this conservatorship. Mr. Kawecki, like Plaintiff, has since passed away.

Plaintiff's conservatorship account.[5]  In this report, Strehl cited his concerns that (i) that personal property was sold without any evidence as to its value; (ii) that family members had complained that very expensive collectibles, jewelry, and coin collections had gone missing without any commensurate return to Plaintiff's conservatorship account; (iii) that there was no documentary support for certain expenditures; (iv) that title to a car apparently owned by Plaintiff or his father was transferred to a relative of Defendant Mial for the sum of $500; and ( v) that various suspect checks had been written using estate funds.  (See Complaint at ¶ 18.)

At the conclusion of his March 1, 2004 reports concerning possible mismanagement of the estates of Plaintiff and his father, special fiduciary Strehl recommended further investigation and possible surcharge of Defendant MCDSCS. Evidently not content to await the outcome of this proposed state court process,[6] Plaintiff commenced the present action in this Court on March 10, 2004, asserting federal due

---

[5]According to probate court documents accompanying Defendants' motion, on the same date in November of 2003 that Strehl was appointed as special fiduciary of Plaintiff's conservatorship, he also was appointed as special fiduciary of the estate of Plaintiff's father, Lawrence R. Kawecki.  Strehl issued March 1, 2004 reports in both cases, and his report about possible mismanagement of Plaintiff's conservatorship account incorporates by reference the report he issued pursuant to his investigation of the alleged mismanagement of the estate of Plaintiff's father.  Strehl also observes that assets apparently were transferred from Plaintiff's father's estate to Plaintiff's conservatorship account, but without appropriate documentation of these transfers.

[6]This process apparently has gone forward, as evidenced by the court documents attached as exhibits to Defendants' motion.  These documents include, for example, subpoenas issued to various banks and to Home Depot seeking the production of account information bearing upon the suspect transactions identified in Strehl's reports.

process and state-law fraud claims.  These claims rest solely upon the above-cited

allegations that funds belonging to Plaintiff were misappropriated from a conservatorship

account established by Defendant MCDSCS in its role as court-appointed conservator.[7]

## III.  ANALYSIS

### A.    The Standards Governing Defendants' Motion

Through their present motion, Defendants have moved for the dismissal of all of

Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction.  In resolving such a jurisdictional challenge, the Court "takes the allegations

in the complaint as true," and determines whether the facts as alleged give rise to a claim

within the Court's subject matter jurisdiction.  Ohio Nat'l Life Ins. Co. v. United States,

922 F.2d 320, 325 (6th Cir. 1990).  "Where subject matter jurisdiction is challenged

pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to

survive the motion."  Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266,

269 (6th Cir. 1990).

---

[7]Plaintiff also seeks certification of this case as a class action, with his personal representative, Joanne Marlowe, named as the representative of a class of individuals who have been similarly injured by Defendants' alleged mismanagement of client funds in cases where the MCDSCS has been appointed as conservator.  In a subsequent motion for class certification, Plaintiff maintains, without evidentiary support, that there are "hundreds" of potential members of this putative class, and that "an investigation launched in early 2003 centers on about 75 cases in which the [MCDSCS] was named as Conservator for mentally incapacitated people from the late 1990s to 2003."  (Plaintiff's Motion for Class Certification, Br. in Support at 6.)  No further information has been provided, however, as to the nature, status, or outcome of this investigation.

**B.   Because Plaintiff Does Not Seek to Overturn an Adverse State Court Judgment, the <u>Rooker</u>-<u>Feldman</u> Doctrine Does Not Apply.**

As their first ground for seeking the dismissal of this action, Defendants argue that the Court lacks subject matter jurisdiction under the <u>Rooker</u>-<u>Feldman</u> doctrine.  In addressing this issue in their briefs, the parties cite a plethora of cases and formulate this doctrine in a variety of ways.[8]  The Court finds it unnecessary to sift through these authorities or address each of the parties' contentions in detail, because the Supreme Court's recent decision in <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 125 S. Ct. 1517 (2005), provides sufficient guidance as to the applicability of the <u>Rooker</u>-<u>Feldman</u> doctrine here.  In particular, it is clear in light of <u>Exxon Mobil</u> that the doctrine does not serve to divest the Court of subject matter jurisdiction over this case.

As observed in this recent ruling, the <u>Rooker</u>-<u>Feldman</u> doctrine derives from the Court's prior decisions in <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S. Ct. 149 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S. Ct. 1303 (1983).  <u>Exxon Mobil</u> summarizes these decisions as follows:

> *Rooker* was a suit commenced in Federal District Court to have a judgment of a state court, adverse to the federal court plaintiffs, "declared null and void."  263 U.S., at 414, 44 S.Ct. 149.  In *Feldman,* parties

---

[8]As noted earlier, the parties and their counsel also engage in a wholly inappropriate round of name-calling.  Plaintiff suggests in his response brief, for example, that Defendants' description of the <u>Rooker</u>-<u>Feldman</u> doctrine "would get . . . a grade of 'F'" if given as an answer in a law school examination.  (Plaintiff's Response at 6 n.5.)  Defendants, for their part, state that Plaintiff's counsel "needs a little more humility and a current version of Shepherds." (Defendants' Reply Br. at 2.)  Such ad hominem attacks do not comport with the civility principles adopted in this District for the conduct of attorneys, and counsel are warned that disciplinary measures will be imposed for any further transgressions of this sort.

6

unsuccessful in the District of Columbia Court of Appeals (the District's highest court) commenced a federal court action against the very court that had rejected their applications.  Holding the federal suits impermissible, we emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in this Court.  Federal district courts, we noted, are empowered to exercise original, not appellate, jurisdiction.   Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court.  Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments.  We declared such suits out of bounds, *i.e.,* properly dismissed for want of subject matter jurisdiction.

125 S. Ct. at 1521.

The procedural backdrop in <u>Exxon Mobil</u> was quite different.  In that case, the parties had a longstanding business relationship involving the payment of royalties. When a dispute arose as to the proper amount of these payments, the federal court defendant, Saudi Basic Industries Corporation ("SABIC"), brought a suit in state court, while plaintiff Exxon Mobil Corporation countersued in a federal district court about two weeks later.  The state court suit subsequently went to trial, resulting in a verdict in favor of Exxon Mobil, and SABIC then appealed this judgment to the state's highest court. During the same period, SABIC moved for dismissal of the federal suit on immunity and other grounds, and then took an interlocutory appeal of the denial of this motion.

The Third Circuit Court of Appeals heard argument on this federal appeal several months after the state court verdict in favor of Exxon Mobil.  Just before oral argument, the Third Circuit *sua sponte* raised the issue whether subject matter jurisdiction was lacking under the <u>Rooker</u>-<u>Feldman</u> doctrine in light of the judgment in the state court

7

litigation.  Because the federal action had been commenced before the state court

judgment was entered, the Third Circuit "did not question the District Court's possession

of subject-matter jurisdiction at the outset of the suit."  Exxon Mobil, 125 S. Ct. at 1525.

Nonetheless, the federal appellate court "held that federal jurisdiction terminated when

the [state] court entered judgment on the jury verdict," reasoning that "[t]he only relevant

consideration" for Rooker-Feldman purposes "is whether the state judgment precedes a

federal judgment on the same claims."  125 S. Ct. at 1525 (internal quotation marks and

citation omitted).

The Supreme Court reversed, ruling that the Third Circuit's decision represented

an unwarranted expansion of the narrow jurisdictional basis for the Rooker-Feldman

doctrine.  The Court explained:

> *Rooker* and *Feldman* exhibit the limited circumstances in which this
> Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257,
> precludes a United States district court from exercising subject-matter
> jurisdiction in an action it would otherwise be empowered to adjudicate
> under a congressional grant of authority.  In both cases, the losing party in
> state court filed suit in federal court after the state proceedings ended,
> complaining of an injury caused by the state-court judgment and seeking
> review and rejection of that judgment.  Plaintiffs in both cases, alleging
> federal-question jurisdiction, called upon the District Court to overturn an
> injurious state-court judgment.  Because § 1257, as long interpreted, vests
> authority to review a state court's judgment solely in this Court, the District
> Courts in *Rooker* and *Feldman* lacked subject-matter jurisdiction.

> When there is parallel state and federal litigation, *Rooker-Feldman* is
> not triggered simply by the entry of judgment in state court.  This Court has
> repeatedly held that the pendency of an action in the state court is no bar to
> proceedings concerning the same matter in the Federal court having
> jurisdiction.  Comity or abstention doctrines may, in various circumstances,
> permit or require the federal court to stay or dismiss the federal action in

> favor of the state-court litigation.  But neither *Rooker* nor *Feldman* supports
> the notion that properly invoked concurrent jurisdiction vanishes if a state
> court reaches judgment on the same or related question while the case
> remains *sub judice* in a federal court.

Exxon Mobil, 125 S. Ct. at 1526-27 (internal quotation marks, citations, and footnote

omitted).[9]  Accordingly, the Court held that "[t]he *Rooker-Feldman* doctrine . . . is

confined to cases of the kind from which the doctrine acquired its name:  cases brought

by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review and

rejection of those judgments."  125 S. Ct. at 1521-22.

Although the procedural backdrop here is somewhat distinguishable from the

circumstances addressed in Exxon Mobil, the Supreme Court's ruling nonetheless defeats

Defendants' appeal to the Rooker-Feldman doctrine in this case.  In particular,

Defendants have failed to establish two essential predicates to the application of Rooker-

Feldman here — namely, that Plaintiff here is a "state court loser" who invites this Court

to reverse a "state court judgment" against him.  As discussed briefly below, neither of

these conditions is present in this case.

First, Plaintiff cannot be deemed a "state court loser," particularly at the time when

he commenced this federal proceeding.  Just a few days before this suit was filed, a

---

[9]The Supreme Court further observed that preclusion law, including the Full Faith and
Credit Act, 28 U.S.C. § 1738, might well dictate the proper disposition of a federal suit upon
entry of judgment in a parallel state court proceeding.  See Exxon Mobil, 125 S. Ct. at 1527.  But
because "[p]reclusion . . . is not a jurisdictional matter," the Court emphasized that "federal
jurisdiction over an action does not terminate automatically on the entry of judgment in the state
court."  125 S. Ct. at 1527.

special fiduciary appointed by the Macomb County Probate Court had noted various apparent irregularities in the management of Plaintiff's conservatorship account, and had recommended further investigation of these matters and possible surcharge of Defendant MCDSCS.  Before any such state proceedings had been commenced, however, Plaintiff filed this action in federal court, founded upon his assertion of federal constitutional claims under 42 U.S.C. § 1983.  Like the plaintiff in Exxon Mobil, then, Plaintiff here had not suffered an adverse state court ruling at the time he commenced this suit, but at worst merely engaged in a "race to the courthouse," in an apparent effort to secure a preferred federal forum in which to litigate the issues surrounding Defendants' alleged mismanagement of his conservatorship account.

Similarly, Defendants have failed to identify any "state court judgment" that might trigger the jurisdictional bar of Rooker-Feldman.  Simply stated, there is no evidence, or even contention, that the allegations made by Plaintiff in this case have been litigated in any state judicial forum.  Indeed, on the date this suit was filed — which, of course, is the operative time frame under Exxon Mobil — it does not appear that the Macomb County Probate Court had even commenced a formal judicial inquiry into the alleged misappropriation of funds from Plaintiff's conservatorship account, much less issued any sort of ruling on this matter.  Rather, the probate court had merely taken a preliminary step toward the initiation of such a proceeding by appointing a special fiduciary to review

10

the disbursements made from this account.[10]

At most, then, the record here suggests the possibility that, by bringing this suit, Plaintiff might have subjected Defendants' actions to scrutiny in two different forums, one state and one federal.  Even if the state court proceeds at a faster pace and renders a final judgment on the matter, Exxon Mobil teaches that these developments would not divest this Court of subject matter jurisdiction.  Because, at a minimum, no such judgment was entered ***before*** the commencement of this action, and because Plaintiff is not inviting this Court to review any such judgment, the Rooker-Feldman doctrine does not dictate the dismissal of this case for lack of subject matter jurisdiction.

**C.**    **A Stay Is Warranted to Prevent Undue Interference with a Pending and Parallel State Probate Court Proceeding.**

As observed in Exxon Mobil, in cases where "there is parallel state and federal litigation" but the Rooker-Feldman doctrine does not apply, "[c]omity or abstention doctrines may [nonetheless] permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation."  Exxon Mobil, 125 S. Ct. at 1526-27.

---

[10]Since Defendant MCDSCS was appointed by the Macomb County Probate Court to act as Plaintiff's conservator, MCDSCS's actions in this role presumably would have been subject to probate court review.  See, e.g., Mich. Comp. Laws § 700.5418 (mandating that "[a] conservator shall account to the court for administration of the trust not less than annually unless the court directs otherwise, upon resignation or removal, and at other times as the court directs").  As a result, the probate court might perhaps have been called upon to enter orders approving MCDSCS's administration of Plaintiff's conservatorship account.  Yet, no such orders appear in the record, and the parties do not otherwise indicate that the probate court was ever asked to approve any of the challenged transactions in this case.  This serves to distinguish this case from Hart v. Comerica Bank, 957 F. Supp. 958, 972 (E.D. Mich. 1997), in which this Court invoked the Rooker-Feldman doctrine to bar a federal court challenge to orders issued by a Michigan probate court.

11

In this case, Defendants appeal to <u>Younger</u> abstention as an alternative ground for seeking dismissal. The Court agrees that abstention is warranted, but finds that the case should be stayed rather than dismissed.

Two abstention doctrines are potentially applicable here. The first of these, and the one cited in Defendants' motion, is the form of abstention endorsed by the Supreme Court in <u>Younger v. Harris</u>, 401 U.S. 37, 91 S. Ct. 746 (1971), and its progeny. Where this doctrine applies, this Court may not reach the merits of the federal suit, but must stay or dismiss the action pending the final outcome of the state court proceedings. As the Supreme Court has explained:

> *Younger v. Harris* . . . and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.

<u>Middlesex County Ethics Committee v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431, 102 S. Ct. 2515, 2521 (1982) (citation and footnote omitted). More recently, the Sixth Circuit observed:

> In our litigious era, multiple lawsuits arising from the same occurrence are commonplace. *Younger* abstention is built upon common sense in the administration of a dual state-federal system of justice in such an era.

<u>Carroll v. City of Mount Clemens</u>, 139 F.3d 1072, 1074 (6th Cir. 1998).  Thus, <u>Younger</u> abstention is triggered when a parallel state proceeding "(1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims."  <u>Carroll</u>, 139 F.3d at 1074.

In challenging the applicability of this form of abstention to this case, Plaintiff contends that two of these three elements are lacking.  First, Plaintiff flatly denies that there is any "pending state proceeding at all," or that he is a party to any such proceeding.  (Plaintiff's Response at 8.)  Rather, in Plaintiff's view, the report of special fiduciary Donald Strehl has created only the ***prospect*** of state court proceedings to seek reimbursement of any funds misappropriated by Defendants in their roles as fiduciaries.  Moreover, even if such proceedings were commenced, Plaintiff states that he "would not be a party," but that this matter would be purely between the special fiduciary and Defendants.  (<u>Id.</u>)

The Court rejects this reading of the procedural record as wholly untenable, particularly in light of developments in the state court since Defendants filed their motion.  First, the Court fails to see how Plaintiff can credibly claim that there is no "pending state proceeding at all," or that he is not a party to this proceeding, where a conservatorship was established ***for Plaintiff*** and Defendant MCDSCS appointed as conservator pursuant to state probate court orders entered in <u>In re Estate of Lawrence J. Kawecki</u>, Macomb County Probate Court Docket No. 03-175, 536-CA, and where there is no evidence that this case has been closed or dismissed.  To the contrary, just a few days before this

13

federal suit was filed, special fiduciary Strehl issued his March 1, 2004 report — again, under the caption of <u>In re Estate of Lawrence J. Kawecki</u> — in which he recommended further investigation and possible surcharge. This report, of course, provides the principal factual basis for the allegations of misappropriation in Plaintiff's present complaint, and he could not possibly have known when he filed this complaint whether the state probate court would accept or reject the special fiduciary's recommendation that further investigation was warranted. Rather, the matter still remained "pending" in the probate court, under any plausible definition of this term.[11]

More importantly, subsequent developments have confirmed that this proceeding is very much pending in state court. As exhibits to the present motion, Defendants have produced subpoenas issued to various banks and retail establishments that were involved in transactions with the conservatorship accounts for Plaintiff and his father. Plainly, then, the state probate court has elected to look into the irregularities cited in the special fiduciary's report. This is further confirmed by the materials submitted as exhibits to Defendants' more recent filings in this case, including a November 9, 2004 petition for

_____

[11]Notably, even if the probate court had not appointed a special fiduciary, or even if this individual had not recommended further investigation and possible surcharge, Michigan law authorizes any "interested person" to seek court appointment of a special fiduciary, Mich. Comp. Laws § 700.1309, and to petition for an accounting of a fiduciary's alleged mishandling of an estate, Mich. Comp. Laws § 700.1308(2). According to the complaint, Joanne Marlowe is Plaintiff's "duly appointed Conservator and Guardian," (Complaint at ¶ 4), and she presumably qualifies as an "interested person" in this role. It seemingly follows, then, that Plaintiff and his conservator could have instituted a probate court proceeding to recover any misappropriations from his conservatorship account, even if such a proceeding was not already "pending" at the time this federal suit was filed.

surcharge filed by the special fiduciary in Plaintiff's probate case,[12] and a notice setting this matter for hearing before the probate court on January 12, 2005.  Thus, even if it was not yet certain at the time this federal action was filed that a surcharge proceeding would be commenced in the state probate court, the state court record reveals that such a proceeding is now pending.  Moreover, it is clear that the state and federal proceedings are "parallel," as both involve allegations of misappropriation of funds from Plaintiff's conservatorship account.

        Next, Plaintiff does not (and cannot) dispute that the second prerequisite to Younger abstention is present here:  namely, that the state court proceeding involves an important state interest.  As repeatedly recognized in the case law, the state probate courts are uniquely qualified to address the matters within their specific purview, and federal courts are reluctant to exercise jurisdiction where it might interfere with the functioning of the state probate courts in these areas.  See, e.g., Lepard v. NBD Bank, 384 F.3d 232, 237-38 (6th Cir. 2004) (affirming a refusal to exercise jurisdiction over claims that the defendants had breached their fiduciary duties in the administration of two trusts, as such matters "fall squarely within the exclusive jurisdiction of the Michigan probate courts"); Cenker v. Cenker, 660 F. Supp. 793, 795-96 (E.D. Mich. 1987) (noting that abstention is particularly appropriate in probate-related cases, in light of "the strong state interest in

_____

        [12]In support of this petition, the special fiduciary alleges that certain payments were made from Plaintiff's conservatorship account without proper substantiation and without apparent benefit to Plaintiff, that Defendant MCDSCS was negligent in maintaining the records for this account, and that MCDSCS violated its fiduciary duty in its handling of Plaintiff's estate.

such matters generally," the "well-developed competence" of the probate courts in

handling these matters, and the greater familiarity that the probate court typically will

have with the facts of a particular case (internal quotation marks and citations omitted)).

Moreover, in this specific case, the importance of the state interest at stake is highlighted

by (i) the state probate court's presumed interest in policing the performance of a

fiduciary, Defendant MCDSCS, that was appointed by the court itself to represent

Plaintiff's interests, see Nilsson v. Ruppert, Bronson & Chicarelli Co., 888 F.2d 452, 454

(6th Cir. 1989) (noting that the state "has a great interest" in addressing allegations that its

judicial system has been subverted); Bortz v. DeGolyer, 904 F. Supp. 680, 684 (S.D.

Ohio 1995) (observing that an administrator appointed by a state court serves as an officer

of that court, and that a federal court ordinarily should not intercede in the state court's

oversight of its officers), and (ii) the state court's determination that a special fiduciary

should be appointed to investigate, and to report to the court, possible breaches of the

fiduciary duties owed by MCDSCS.

This leaves only the question whether the parallel probate court proceeding affords

Plaintiff an adequate opportunity to raise his constitutional challenges. On this point,

Plaintiff offers only the bare assertion, unsupported by any citation to authority, that

"[t]he Macomb County Probate Court is a court of limited jurisdiction, and under

Michigan law has no authority to entertain section 1983 actions." (Plaintiff's Response at

9.) Defendants, in contrast, point to the Michigan statutes that grant probate courts the

authority to "[h]ear and decide a claim by or against a fiduciary or trustee for the return of

16

property," Mich. Comp. Laws § 700.1303(1)(h), and to address a fiduciary's "misfeasance, malfeasance, nonfeasance, or other breach of duty," Mich. Comp. Laws § 700.1308(1), as well as the statutory grant of exclusive probate court jurisdiction to control how the estate of a protected individual such as Plaintiff "is managed, expended, or distributed to or for the use of the protected individual," Mich. Comp. Laws § 700.5402(b).

As Defendants correctly point out, the Michigan Court of Appeals has construed this statutory scheme as vesting exclusive jurisdiction in the probate courts to hear tort claims arising out of the administration of a trust.  See Manning v. Amerman, 229 Mich. App. 608, 582 N.W.2d 539, 541-42 (1998); see also Shields v. State Farm Mutual Automobile Ins. Co. (In re Estate of Shields), 254 Mich. App. 367, 656 N.W.2d 853, 855 (2002) (noting more generally that the Michigan Legislature has expanded the scope of the probate court's jurisdiction in order "to simplify the disposition of actions involving estates").  This same reasoning presumably could be extended to federal § 1983 claims arising out of the administration of a trust, estate, or conservatorship, at least in the absence of any Michigan authority to the contrary.  Moreover, this Court's own research has disclosed cases in which constitutional theories have been advanced in the Michigan probate courts, albeit only defensively.  See, e.g., City of Fremont v. Beatty, 53 Mich. App. 137, 218 N.W.2d 799 (1974).  Under these circumstances, the Court is not prepared to accept Plaintiff's bare, unsupported assertion that he could not raise a federal constitutional challenge in the course of the state probate court proceedings.  See Carroll

17

v. City of Mount Clemens, 945 F. Supp. 1071, 1073-74 (E.D. Mich. 1996) (noting the presumption "that the state courts are able to protect the interests of the federal plaintiff," with the plaintiff bearing the burden to show otherwise), aff'd in relevant part, 139 F.3d 1072 (6th Cir. 1998)

In any event, Plaintiff's argument on this point rests upon vague generalities, utterly divorced from the specifics of the constitutional claim he has actually asserted in this case. While there is not an exact alignment in the law governing the federal due process claim asserted here and the claim of surcharge being pursued in the state probate court, the facts underlying these claims are virtually identical. In particular, the allegations set forth in Plaintiff's complaint are of precisely the same sort as those made in the special fiduciary's probate court petition for surcharge — namely, that Defendant MCDSCS and certain individuals acting on its behalf misappropriated funds from Plaintiff's conservatorship account. These same allegations form the basis for both (i) Plaintiff's claim here that Defendant MCDSCS and its agents violated his constitutional rights, and (ii) the special fiduciary's claim that MCDSCS breached fiduciary duties owed to Plaintiff and his estate under state law.

Consequently, the same factual issues would be litigated in either the state or the federal proceeding. In either case, moreover, a set of findings favorable to Plaintiff on these issues would result in the restoration of the funds improperly taken from his conservatorship account. While the available relief might not be entirely coextensive, there is no doubt that Plaintiff could be made whole for any loss of funds in the state court

18

proceeding.  This, in the Court's view, is an important consideration in determining whether Plaintiff has an adequate opportunity to raise his federal claim before the state probate court.

Indeed, it could well be argued that Plaintiff's federal due process claim is not yet ripe, so long as a claim of surcharge is still available — and, in fact, still pending — before the state court.  After all, the sole basis for Plaintiff's federal constitutional claim is that Defendants violated "his right not to be deprived of property without due process of law pursuant to the Fifth and Fourteenth Amendments," and that, as a result of this violation, Plaintiff "has been deprived of monies, funds, property, and other assets of a conservatorship over which [D]efendants had exclusive control."  (Complaint at 7, ¶¶ 3-4.)  Surely, such a federal constitutional violation does not occur whenever a court-appointed fiduciary misappropriates funds from an estate or conservatorship.  To so hold would constitutionalize the traditional state-law domain of estate administration, and would convert each and every state-law breach of fiduciary duty claim into a matter governed by federal constitutional law.

The courts have long since confirmed that the reach of the Fourteenth Amendment's due process clause is not so expansive.  Where, as here, a plaintiff complains of an injury arising from the random and unauthorized conduct of a state actor, as opposed to an action taken pursuant to an established state procedure,[13] the plaintiff

_____

[13]If Plaintiff intends to make the latter sort of due process claim, this is nowhere apparent in his complaint, which is devoid of any allegation that the misappropriation of funds from his

19

"must show that available state procedures were not adequate to compensate him for the deprivation of his property."  <u>Vicory v. Walton</u>, 721 F.2d 1062, 1063-64 (6th Cir. 1983); <u>see also</u> <u>Wilson v. Beebe</u>, 770 F.2d 578, 583-84 (6th Cir. 1985).  Plaintiff has made no such allegation in his complaint — nor could he, in light of the pending state court proceeding that might yet compensate him for the alleged misappropriation of his property.  Under these circumstances, Plaintiff not only has an adequate opportunity to seek relief in the state court, but he seemingly ***must*** do so before pursuing his federal due process claim in this Court.  Accordingly, all three of the prerequisites for <u>Younger</u> abstention are present here.

Beyond these specific elements of a <u>Younger</u> abstention inquiry, the Court observes more generally that this case, as it has developed, poses a particularly heightened risk of undue interference with the parallel proceeding in the Macomb County Probate Court.  In support of their recent motion for a stay of discovery, Defendants noted that Plaintiff has sought in this case to take the deposition of Macomb County Judge Pamela G. O'Sullivan, who is presiding over the parallel state court proceeding, as well as another probate court official, Donald J. Housey.  Absent the stay of discovery imposed by this Court, the deposition of Judge O'Sullivan was set for January 10, 2005, just ***two days*** before the scheduled hearing on the special fiduciary's petition for surcharge.  The Court can hardly imagine a greater or more direct interference with a

_____

conservatorship account was traceable to some established state procedure that lacked adequate pre-deprivation safeguards.

20

parallel state court proceeding than to insist that the presiding state court judge submit to a deposition in the federal court litigation.  The only possible purpose of such discovery would be to provide a factual record upon which this Court could disrupt the parallel state court proceeding and second-guess the state court's rulings.  The Court is unwilling to proceed down this path, and instead concludes that Younger abstention is warranted in order to avoid a substantial risk of direct interference with the state probate court proceeding.  See Gilbertson v. Albright, 381 F.3d 965, 976 (9th Cir. 2004) ("There is no doubt that interference with state proceedings is at the core of the comity concern that animates *Younger*.").

Alternatively, the Court reaches much the same conclusion by resort to the abstention doctrine recognized by the Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236 (1976).  While the Court in that case noted the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," and cited the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," the Court nonetheless observed that considerations of federal-state comity and "wise judicial administration" can justify federal court abstention in favor of a parallel state court proceeding.  Colorado River, 424 U.S. at 817-18, 96 S. Ct. at 1246.  More generally, the Supreme Court has elsewhere emphasized that "[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases," but rather "reflect a complex of considerations designed to soften the tensions

21

inherent in a system that contemplates parallel judicial processes." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 n.9, 107 S. Ct. 1519, 1526 n.9 (1987).

This case readily satisfies the threshold condition for Colorado River abstention — namely, the existence of concurrent and parallel state and federal proceedings. See Romine v. Compuserve Corp., 160 F.3d 337, 339 (6th Cir. 1998). As explained by the Sixth Circuit, the two proceedings need not be identical, nor must there be a complete identity of parties. Romine, 160 F.3d at 340. For the reasons cited earlier — and based, in particular, upon the nearly complete identity of material facts and allegations at issue in the state and federal litigation — the Court finds that the state probate court proceeding qualifies as "parallel" for purposes of the Court's abstention analysis.

Next, in determining whether to apply the Colorado River doctrine here, the Court must consider such factors as (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law provides the rule of decision; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. Romine, 160 F.3d at 340-41. Of all of these factors, only two or three are neutral or militate against abstention. The federal forum does not appear to be particularly inconvenient to the parties, and federal law, of course, governs Plaintiff's § 1983 claim in this case (albeit not his Count II claim of fraud). In addition, as discussed earlier, it

22

appears, but is not certain, that Plaintiff's federal constitutional claim could be addressed in the state probate court proceedings.

In contrast, several of the above considerations weigh heavily in favor of <u>Colorado River</u> abstention. First, the state probate court has exercised jurisdiction over Plaintiff's conservatorship — and, indeed, it came into being under that court's authority. Similarly, the state court litigation was first in time and involves virtually the same factual issues, so that abstention would serve to avoid piecemeal litigation. Moreover, because of the longer period during which this matter has been pending in state court, the state proceeding has progressed a great deal further, with a special fiduciary having already investigated the transactional history of Plaintiff's conservatorship account and issued a report, and with subpoenas having been issued and a petition for surcharge filed (and perhaps even heard by the probate court). Finally, the probate court provides an adequate forum in which Plaintiff may seek redress for the alleged misappropriations from his conservatorship account.

Indeed, in this Court's view, this last consideration tips the balance heavily in favor of abstention. The Michigan Legislature has enacted a detailed scheme for regulating the administration of trusts, estates, and conservatorships. In addition, the Michigan probate courts have developed considerable expertise in overseeing the performance of fiduciaries and reviewing their accountings. This state system has already been engaged in this case, and Plaintiff himself acknowledges in his complaint that a special fiduciary appointed by the state probate court has uncovered irregularities in the

23

management of his conservatorship account.  Simply put, state court procedures exist for

looking into the matters of which Plaintiff complains, and nothing in the record suggests

that these procedures might prove inadequate to address the particular circumstances

presented here — to the contrary, it appears that the system is functioning as designed.

Consequently, the Court views abstention as appropriate, and indeed necessary, to avoid

any undue interference with these state court mechanisms for redressing Plaintiff's

alleged injuries.

        Finally, there remains the question whether this case should be dismissed without

prejudice or stayed pending the outcome of the state probate court proceeding.  The

pertinent case law, and particularly the Sixth Circuit's decision in Carroll, supra, points

fairly unmistakably in favor of a stay.  Plaintiff is entitled, as a general matter, to pursue

his § 1983 claim in a federal forum if he so chooses.  Moreover, as discussed above, this

Court cannot be certain that the state probate court will agree to hear Plaintiff's federal

due process claim.  While the state court's rulings might well have some preclusive effect

upon the claims asserted here, the Court believes "in the interests of caution" that this

case should be stayed rather than dismissed, in order to "protect against the possibility

that [Plaintiff] could be deprived of the opportunity to present the merits of [his federal]

claim[] in state court," and in order to protect against the possible running of any

applicable statute of limitations.  Carroll, 139 F.3d at 1075-76; see also Quackenbush v.

Allstate Ins. Co., 517 U.S. 706, 730, 116 S. Ct. 1712, 1727-28 (1996) (noting that, under

the Supreme Court's abstention decisions, the federal courts have been permitted to stay

but not dismiss claims for damages); <u>Gilbertson</u>, 381 F.3d at 981 (same).

### IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' July 20, 2004 Motion to Dismiss is GRANTED IN PART and DENIED IN PART, in accordance with the rulings set forth in this Opinion and Order.

Next, IT IS FURTHER ORDERED that Plaintiff's December 15, 2004 Motion for Class Certification is DENIED, but without prejudice to Plaintiff's opportunity to re-file this or a similar motion in the event that the Court lifts the stay imposed on this litigation. Finally, IT IS FURTHER ORDERED that Defendants' January 7, 2005 Motion for Stay of Plaintiff's Motion for Class Certification and for Expedited Consideration is DENIED AS MOOT.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  April 29, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 29, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager